■ CARLTON A. LOWE et al., Appellants, v DAVID J. BENNETT et al., Respondents.—Order, Supreme Court, Bronx County (Irma Santaella, J.), entered June 24, 1985, which, *inter alia,* granted defendants' motion for summary judgment dismissing the complaint, affirmed, without costs or disbursements.

Plaintiffs Carlton and Marcia Lowe, en route to Canada for a vacation, were involved in an accident on August 13, 1982 when their automobile was struck in the rear by a vehicle driven by David Bennett and leased from Budget Rent-A-Car, in Grand Island, New York. As a result, Carlton Lowe claims that he suffered a significant limitation of a body function viz., a continuing inability to use or turn his neck as a result of a cervical sprain, and that he was unable to work for 93 days following the injury. He also claimed to have suffered a cerebral concussion, headaches and dizziness from postconcussion syndrome, lumbosacral sprain, and aggravation of discongenic disease of the cervical spine. Marcia Lowe claimed that she was totally incapacitated from her employment until October 16, 1982, and that she had sustained, *inter alia,* a

cerebral concussion, postconcussion syndrome which also resulted in headaches and dizziness, and a sprain of her left shoulder.

After the action had been noticed for trial, defendants moved for summary judgment on the ground that plaintiffs' injuries did not meet the threshold requirement of Insurance Law § 671 (recodified as Insurance Law § 5101 *et seq.,* eff Sept. 1984). The relevant amended statute recites, in pertinent part, " 'Serious injury' means a personal injury which results in * * * significant limitation of use of a body function or system; or a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." (Insurance Law § 5102 [d].) Since, "[t]acit in this legislative enactment is that any injury not falling within the new definition of serious injury is minor * * * [the court must] pass on the threshold question of whether the plaintiff * * * has established a prima facie case that he sustained a serious injury within the meaning of the statute." *(Licari v Elliott,* 57 NY2d 230, 235.)

At the outset, we are all in agreement that an attorney's affidavit is sufficient to support a motion for summary judgment when it is accompanied by documentary evidence and exhibits establishing the movant's right to relief. *(See, e.g., Olan v Farrell Lines,* 64 NY2d 1092; *Zuckerman v City of New York,* 49 NY2d 557; *Bradt v Hancock Mut. Life Ins. Co.,* 98 AD2d 886.) In this case, defendants' counsel offered an affidavit based wholly upon documentary evidence in his possession, consisting of uncontroverted facts or facts admitted by plaintiffs (e.g., the transcripts of plaintiffs' depositions), hospital records and physicians' reports provided by plaintiffs' counsel. Contrary to plaintiffs' assertions, defendants' counsel did not purport to set himself up as a medical expert.

In opposition to the motion and as proof of their injuries, plaintiffs offered the affirmation of Dr. Parnes, a physician who treated the Lowes after they returned to New York. (Following observation and treatment in the emergency room of a local hospital and an overnight stay in a motel, Carlton Lowe drove from Grand Island to his home in The Bronx the day after the accident.) He prescribed a course of physiotherapy for Mrs. Lowe, and advised her to change her employment to a position which would involve less stress on her back. He

also prescribed a course of physical therapy, as well as a neck brace and back support for Mr. Lowe, who, according to Dr. Parnes, was totally disabled for 93 days following the accident. Dr. Parnes was also of the opinion that Marcia was totally disabled from August 13th to November 16th. The report of Dr. Robert Mintzner, the physician at Kenmore Mercy Hospital who examined Carlton Lowe after the accident, found mild degenerative changes in the cervical spine and degenerative changes in the thoracic spine, but stated that both were otherwise normal. The medical report regarding Marcia, also made from X rays taken at the time of the accident, revealed only degenerative changes in the thoracic spine, but no fractures, concussion, dislocations or other abnormalities. In addition, she returned to work less than 60 days after the accident. Thus, except for preexisting degenerative changes, none of the injuries claimed by either plaintiff appears on the report made after the original examination.

The affirmation of Dr. Parnes is not only contradicted by the initial report, but inasmuch as it is not affirmed by him to be true under the penalties of perjury, is also not evidence competent to defeat a motion for summary judgment (see, CPLR 2106; *Zoldas v Louise Cab Corp.,* 108 AD2d 378). As a result, plaintiffs have not met their burden. Even if the affirmation were competent, however, its contents would not be sufficient to defeat the motion since they are speculative and do not have support in the medical records. As was noted by the Court of Appeals in *Lopez v Senatore* (65 NY2d 1017, 1020): "[T]he insufficiency of conclusory assertions of 'serious injury' is underscored in cases under the No-Fault Law, where 'the purpose of enacting an objective verbal definition of serious injury was to "significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium." ' " (Quoting *Licari v Elliott, supra,* at p 236, quoting Memorandum of State Executive Dept, 1977 McKinney's Session Laws of NY, at 2448.)

Cases such as the one presented are clearly of the type which the Legislature sought to remove from the court system. Plaintiffs had no manifest physical injuries at the time of the accident, and present only claims of neck and back pain without any objective findings of injury. The conclusory allegations in Dr. Parnes's affirmations, based on subjective findings and plaintiffs' complaints, fail to establish a prima facie case of "serious injury". Plaintiffs' medical proof is doubtful at best, and is contradicted by all the competent evidence. The

Legislature has made a determination to exclude certain types of claims from the judicial forum. The wisdom of that determination may not be challenged and, indeed, is not before us. What we have here are two plaintiffs who have undoubtedly suffered some pain, but who have no ascertainable serious injuries, and who have not offered satisfactory proof that their unavailability for work resulted from injuries incurred in the accident.

Thus, the complaint was properly dismissed. Concur—Sullivan, J. P., Ross and Kassal, JJ.

Milonas and Ellerin, JJ., dissent in a memorandum by Ellerin, J., as follows: Since plaintiffs have submitted sufficient proof at this stage to establish that they suffered serious injuries within the meaning of the No-Fault Law (Insurance Law § 5102 [d]; § 5104 [a]; *Lopez v Senatore,* 65 NY2d 1017; *Licari v Elliott,* 57 NY2d 230), the granting of defendant's motion for summary judgment was inappropriate. Accordingly, I would reverse and direct a trial.

The plaintiffs and their two young children were driving north on interstate highway I-190N near the upstate town of Grand Island, New York, on August 13, 1982, when the car they were driving was struck from the rear by a car allegedly owned by defendant Budget Rent-A-Car and operated by defendant David J. Bennett. The force of the impact caused the plaintiffs' car to bound off the highway, spin around twice, and land in a ditch. The Lowes were taken by ambulance to a local hospital and were treated in the emergency room for 3½ hours and then released. The family was en route to a Canadian vacation, but after spending that night in a hotel, returned to their Bronx home.

Once they returned home, Mr. and Mrs. Lowe were examined by their local physician, Dr. Lobbi. Carlton Lowe was examined for pain in his head, back, and left arm. Marcia Lowe was examined for pain in the back, left arm, and left hip. Each was referred to Dr. Irving Parnes for their orthopedic injuries, Dr. Paul S. Slossberg for their neurological injuries, and Dr. Amiel Z. Rudavsky for a brain scan.

Carlton Lowe was treated by Dr. Parnes on 24 occasions between August 23, 1982 and January 11, 1983. Dr. Parnes' treatment included examinations, prescription of medicine, heat treatment, and physiotherapy. Dr. Slossberg administered EEG and muscle tests during seven office visits between August and November and diagnosed head trauma with contusion, cervical strain and lumbosacral strain.

In his affirmation submitted in opposition to the motion for summary judgment, Dr. Parnes diagnosed Carlton Lowe as suffering from cerebral concussion, postconcussion syndrome, severe cervical sprain with rigidity and radiculitis and with severe flareups of rigidity and a continuing inability to use or turn his neck, and related back ailments. Dr. Parnes prescribed a course of physical therapy, and a neck brace and back support. He reports that these injuries are causally related to the automobile accident, and expressed an opinion that the injuries involve a permanent consequential limitation of the use of a body function, namely the inability to turn his neck.

Carlton Lowe alleges in his affidavit, and testified at his examination before trial, that at times he is unable to turn or use his neck and that he cannot sit still for long periods of time. Immediately following the accident, he was confined in bed for three weeks. As confirmed by a letter from his employer, he was required to be absent from his job as an accountant for 93 days following the accident.

Insurance Law § 5104 (a) requires that there shall be no right of recovery for noneconomic loss in a personal injury action brought by a covered person against a covered person except in the case of serious injury. "Serious injury" is defined as, *inter alia,* "significant limitation of use of a body function or system" or "medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury". (Insurance Law § 5102 [d].)

The court must decide, as a matter of law, the threshold issue of whether plaintiff has made a prima facie showing of serious injury. *(Licari v Elliott,* 57 NY2d 230, *supra.)* However, on a motion for summary judgment the defendant has the burden of showing that plaintiff has not sustained a serious injury, and it is only after defendant has met that burden that plaintiff must go forward and submit evidence to raise a question of fact. *(E.g., Mulhauser v Wood,* 107 AD2d 1019.)* If plaintiff submits medical evidence by the treating physician indicating a significant limitation of use of a described body function, summary judgment should be denied. *(Lopez v Senatore,* 65 NY2d 1017, *supra.)*

Here, the evidence submitted indicates that Carlton Lowe

has suffered a significant limitation of a body function, i.e., the use of his neck. More significantly, Carlton's injuries satisfy the other prong of the definition of serious injury propounded in the statute and in *Licari (supra)*—the inability to attend at his job for 93 days following the injury—thus establishing that he was prevented from performing substantially his daily activities for a period of at least 90 days.

The evidence submitted in support of Marcia Lowe's claim of serious injury on her separate, individual cause of action also raises issues of fact which prevent the grant of summary judgment on this threshold question.

Dr. Parnes submitted a separate affirmation reporting Marcia's injuries, which he diagnosed as cerebral concussion, postconcussion syndrome, anxiety, trauma to right side of face, cervical sprain with left radiculitis and rigidity, sprain of left shoulder with pain, numbness and restriction of motion, and lumbar sprain. She received physiotherapy twice weekly for eight or nine months. She visited Dr. Slossberg on five occasions in August and September 1982 for head trauma and lumbosacral sprain.

Marcia Lowe testified in her affidavit and the EBT submitted on the motion that she cannot do any heavy lifting and is periodically unable to straighten her back. Immediately after the accident she was confined in bed for a period of one week. The injuries caused Marcia to be absent from work for eight weeks. While Marcia Lowe returned to her job as a supervising nurse at a Bronx nursing home after those eight weeks, she was unable to fully perform her duties there, such as lifting patients. Because of the significant limitation of her back functions, Ms. Lowe has been forced to give up her active nursing occupation and obtain an administrative desk job.

Marcia Lowe has also met her burden on this motion for summary judgment of establishing an issue of fact as to whether she sustained the threshold requirement of serious injury. First, she has demonstrated a significant limitation of the use of a bodily function in the rigidity of her back and her inability to perform any lifting. These serious and permanent injuries are qualitatively more substantial than the relatively minor back injuries in cases where a "serious injury" has not been found. (*E.g., Zoldas v Louise Cab Corp.,* 108 AD2d 378; *Dwyer v Tracey,* 105 AD2d 476; and *Nolan v Ford,* 100 AD2d 579, *affd* 64 NY2d 681.) Moreover, the significance of the injury was attested to by Dr. Parnes, whose opinion was based on the objective details of his diagnosis. Such opinion evidence

is sufficient to defeat summary judgment. *(Lopez v Senatore, supra; Mulhauser v Wood, supra.)*

Furthermore, it cannot be said on this record that the mere fact that Marcia Lowe returned to work after eight weeks contradicts the fact that she did not substantially curtail her usual and customary daily activities for a period of 90 days in the 180 days following the accident. While she returned to work, she did not perform all of her required tasks. Moreover, her usual activities as a mother and housekeeper were curtailed for a period of time substantially longer than the time she missed from work. Plaintiff Marcia Lowe has at least raised a factual question on this issue sufficient to defeat summary judgment *(Sole v Kurnik,* 119 AD2d 974) and to warrant a trial.